OPINION
{¶ 1} John D. Applegate ("Applegate") appeals from a judgment of the Darke County Court of Common Pleas, which overruled his motion for relief from judgment.
 {¶ 2} John and Angela Applegate (nka Angela Severson) were granted a dissolution of *Page 2 
marriage in 2003, at which point they had three young children. A separation agreement that the parties had negotiated themselves was incorporated into the dissolution decree. Although the parties had agreed on the terms, the separation agreement was drafted by Severson's attorney. After the agreement was drafted, Applegate took advantage of a free consultation with an attorney to have her review the document, but no changes were made as a result of the consultation.
 {¶ 3} The separation agreement provided that Applegate would pay Severson $4,500 per month for the first 48 months. The payment would then be reduced to $3,500 per month until their youngest child's 18th birthday. Thereafter, the payment would be reduced to $2,500 until September 2031, when the payments would stop. In the agreement, Severson was awarded the house, which was the parties' only substantial asset, and she was required to make the mortgage payments. Severson was also required to refinance the home in her own name. The agreement stated that Severson "shall continue to reside in the residential property located at 1801 Ashford Lane, Newark, Ohio." Applegate was not ordered to pay spousal support or child support. He was responsible for the repayment of his student loans from undergraduate and medical school. The decree expressly stated that the court would not retain jurisdiction over spousal support and that the agreement could not be altered except by agreement of both parties. The parties were granted a dissolution of marriage on November 21, 2003.
 {¶ 4} In early 2006, Severson remarried and moved from 1801 Ashford Lane to a home in Columbus, about 30 miles from Ashford Lane and Applegate's nearby residence. Believing that the terms of the separation agreement had required Severson to live in the marital residence to facilitate his relationship with the children, Applegate filed a motion for relief from judgment. He argued that it was no longer equitable for him to make the payments set forth in the separation agreement and that *Page 3 
he was entitled to relief from judgment.
 {¶ 5} After a lengthy hearing at which Applegate, Severson, and the attorney who had drafted the separation agreement testified, the magistrate recommended the denial of the motion for relief from judgment. The magistrate concluded that the separation agreement did not make the payments to Severson contingent on her continued residence on Ashford Lane. Applegate filed objections to the magistrate's report and recommendation. The trial court overruled the objections and adopted the magistrate's recommendation.
 {¶ 6} Applegate appeals from the trial court's judgment, raising four assignments of error. We will address the first two assignments together.
 {¶ 7} I. "IN POST DISSOLUTION OF MARRIAGE PROCEEDINGS, A TRIAL COURT ERRORS [SIC] AS A MATTER OF LAW, WHEN IT HOLDS THAT JURISDICTION IS LACKING TO MODIFY A PRIOR APPROVED SEPARATION AGREEMENT WHEN SUCH A HOLDING IS SPECIFICALLY CONTRARY TO THE TERMS OF THE COURT APPROVED AGREEMENT"
 {¶ 8} II. "THE TRIAL COURT ERRED AS A MATTER OF LAW IN FAILING TO APPLY THE PRINCIPLES AND LAW PERTAINING TO OHIO CIVIL RULE 60(B)(4) AS TO THE FACTS AND CIRCUMSTANCES OF THIS CASE IN AWARDING RELIEF FROM JUDGMENT."
 {¶ 9} Applegate claims that the terms of the separation agreement were meant to be modifiable. He also asserts that Civ.R. 60(B) "is a remedial rule to be liberally construed with a view toward affecting a just result," and that the just result would be to vacate his obligation to make payments to Severson for a house in which she no longer lives. He claims that there has been a *Page 4 
change of circumstances that was unforeseen and which makes the prospective application of the judgment inequitable. He also claims that there was no consideration for his promise to make the payments except for Severson's promise to continue to reside at the house.
 {¶ 10} The pertinent provisions of the separation agreement are as follows.
 {¶ 11} Under the section entitled "Division of Property," the agreement stated: "It is the agreement of the parties that the Wife shall continue to reside in the residential real property located at 1801 Ashford Lane, Newark, Ohio." The section went on to state that Severson would receive that property free and clear of any claim by Applegate, and that she would assume the obligations related to the maintenance of the property. The graduated payment schedule discussed above — which set decreasing payment amounts over approximately 25 years — was also set forth under this section.
 {¶ 12} Under the section entitled "Child Support," the parties agreed to a "lump sum payment relative to the property/debt distribution" which was intended to provide for the support of the children in lieu of a child support payment. Severson implicitly waived her right to seek any increase in support as Applegate's income increased. Under the section entitled "Shared Parenting," the agreement set forth the parties' intent to share parenting time pursuant to an informal, negotiated schedule. The court retained jurisdiction with respect to all issues except spousal support.
 {¶ 13} Based on the language of the agreement and the evidence presented at the hearing, the trial court concluded that the separation agreement did not condition Applegate's payment obligations on Severson's continued residence at 1801 Ashford Lane. It stated:
 {¶ 14} "[T]he Court agrees with the Magistrate's decision that there is no requirement in the Separation Agreement that the Wife always reside in the marital residence, that the children always reside in the marital residence or that there would always be a shared parenting arrangement. There *Page 5 
were no contingencies to excuse Husband from the monthly payment obligations which were clearly set forth in the Separation agreement. While the circumstances of the parties have changed, such changes are not the basis for a meritorious claim."
 {¶ 15} The trial court reasonably concluded that the separation agreement did not obligate Severson to live in the marital home until the children were grown. It was reasonable for the trial court to find that if the parties intended for the children's continued residence at 1801 Ashford to be an integral part of the shared parenting plan, as Applegate contends, such a requirement would have been explicitly set forth in the shared parenting section of the agreement. Moreover, we reject Applegate's claim that Severson's promise to continue to reside at the house was the only consideration for his promise to make the payments set forth in the agreement. In our view, the fact that the agreement did not set forth any child support obligation, which would have been tied to Applegate's future earnings and which he would certainly have been obligated to pay, or spousal support obligation, which Severson might well have been awarded after nine years of marriage, was consideration for the payment schedule in question.
 {¶ 16} Applegate has asserted that the payments required of him in the separation agreement were closely tied to the mortgage payments on the house, which supports the assertion that the payments were tied to Severson's continued residence at 1801 Ashford. The record, however, does not support this claim. There is no documentary evidence that the mortgage payments on the house correlate to the payment schedule set forth in the separation agreement. The exhibits indicate that Severson's mortgage payment, after refinancing, was $2,811.30 per month. As discussed above, Applegate's obligation under the separation agreement was $4,500 per month for the first four years, and $3,500 per month for many years thereafter. The mortgage would be paid off in 2034, whereas *Page 6 
Appelgate's payments were set to end in 2031. Severson testified that the first reduction — from $4,500 to $3,500 — corresponded with the youngest child's attendance at school, the related reduction in child care costs, and Severson's ability to work more. She stated that the second reduction — from $3,500 to $2,500 — was tied to the emancipation of the youngest child, and not to any change in the mortgage payment.
 {¶ 17} Severson testified that she wanted the house as an asset but that she also used the monthly payment "to pay for any expenses with the children and maintenance of the home." Applegate also testified that Severson was expected to manage the monthly payment "in such a way as to provide shelter for the children, to provide clothing, food, utilities, babysitting costs," and whatever other costs she needed to cover. We note that after the first reduction to $3,500 per month, less than $700 per month would have been available to Severson to apply to the non-housing needs of the children.
 {¶ 18} The attorney who drafted the separation agreement testified that the language in the agreement was not intended to require Severson to live in the home.
 {¶ 19} Based on this testimony and the lack of evidence suggesting that the monthly payments required by the separation agreement were tied to the mortgage on the marital home, the trial court reasonably concluded that the monthly payments established by the separation agreement were not conditioned on Severson's continued residence in the marital home.
 {¶ 20} Furthermore, we note that relief pursuant to Civ.R. 60(B)(4) is appropriate only where circumstances occur which were neither foreseeable nor within the control of the parties. Wurzelbacher v.Kroeger (1974), 40 Ohio St.2d 90, 320 N.E.2d 666; Chapman v. Chapman, Montgomery App. No. 21244, 2006-Ohio-2328; Veidt v. Cook, Butler App. No. Ca2003-08-209, *Page 7 
2004-Ohio-3170. Although Applegate sought relief pursuant to Civ.R. 60(B)(4), he presented no argument that Severson's remarriage and/or her desire to move from the marital residence was unforeseeable. In our view, these circumstances were entirely foreseeable. For this reason, as well as those discussed above, relief pursuant to Civ.R. 60(B)(4) was not appropriate.
 {¶ 21} Finally, it is clear that the trial court did not hold that it lacked jurisdiction to modify the separation agreement, as Applegate contends. Rather, it held that Applegate was not entitled to Civ.R. 60(B)(4) relief. The first and second assignments of error are overruled.
 {¶ 22} III. "THE FAILURE TO GRANT THE MOTION FOR NEW TRIAL WAS IMPROPER WHERE THE TRIAL COURT HAD DECIDED THE OBJECTIONS PRIOR TO THE FULL BRIEFING OF SAME"
 {¶ 23} Applegate asserts that the trial court should have given him more time to file his supplemental objections after the transcript was completed before ruling on his objections. The magistrate's decision of March 19, 2007, informed the parties that, "[i]n order to timely rule on any objections[,] the court will require the party filing objections to state with particularity the basis for obj ections within fourteen days of the Magistrate's Decision. The time will not be extended or stayed byordering a transcript. * * *"
 {¶ 24} Applegate did not state his objections with particularity within fourteen days. Rather, on March 30, he filed "objections" wherein he stated en toto that he objected "to the Magistrate's fact finding, conclusions of law and all analysis relating thereto." He represented that "[a] more comprehensive objection with complete memorandum [would] be filed subsequent to the preparation of the trial transcript." Simultaneously, he ordered the transcript. On April 13, 2007, Severson filed a response to the objections, a copy of which she served upon Applegate, wherein she noted *Page 8 
Applegate's failure to file particularized obj ections or to move for additional time within which to file objections. The transcript was filed May 18. The trial court overruled Applegate's "generalized objections" and adopted the magistrate's decision on May 29. On June 5, Applegate simultaneously moved for a new trial and filed "supplemental specific objections." The motion for new trial sought no more than consideration of Applegate's supplemental objections.
 {¶ 25} In its judgment, the trial court stated that Applegate had not filed supplemental objections pursuant to Darke County Local R. 5(F). Applegate contends that this rule does not apply to supplemental objections; rather, it is directed to responsive pleading, and limits a party's response to ten days. However, because Applegate had not properly objected to the magistrate's decision in the first instance with specific objections or moved for additional time to file more specific objections, we find no error in the trial court's prompt disposition of the case once the transcript had been filed, irrespective of whether Local R. 5 applied.
 {¶ 26} We recognize that it is customary to supplement objections after the hearing transcript is filed. Indeed, the trial court appears to have been willing to consider supplemental objections had they been filed within ten days of the filing of the transcript. Here, Applegate's March 30 objections provided no insight into the nature of his disagreement with the magistrate's decision even though the decision clearly required particularity. We do not read the above quoted language as saying the trial court would not consider a motion for additional time to file proper objections or supplemental objections; rather, we understand the language to say that the deadline for filing objections would not be automatically extended or stayed by the mere ordering of a transcript. Here, Applegate filed no motion for additional time, even though Severson's April 13 response suggested he could have done so. Had Applegate moved for additional time, the trial court might well have given him until May 28, *Page 9 
being ten days after the filing of the transcript, if not more time, if requested.
 {¶ 27} The third assignment of error is overruled.
 {¶ 28} IV. "IT WAS IN ERROR FOR THE MAGISTRATE TO LIMIT THE QUESTIONING OF APPELLANT'S ATTORNEY AS TO THE BASIC TERMS OF THE SEPARATION AGREEMENT AND THE STRAIGHT-FORWARD MEANING OF SAME"
 {¶ 29} Applegate claims that the trial court erred in limiting his attorney's questioning of Severson about her interpretation of specific language in the separation agreement. In particular, Applegate wanted Severson to clarify why she believed that the monthly payment provision in the agreement as applied to Appelgate was obligatory while the residency provision as applied to her was not obligatory.
 {¶ 30} Even if we assume, for the sake of argument, that Applegate should have been allowed to pursue this line of questioning, it is apparent that Severson's answer would not have affected the outcome of this case. Severson's position as to the requirements of the separation agreement was clear from her other testimony and was corroborated by the testimony of the attorney who drafted the separation agreement. The trial court simply was not persuaded that the separation agreement incorporated a requirement that Severson live in the marital home until 2031. The alleged error was harmless.
 {¶ 31} The fourth assignment of error is overruled.
 {¶ 32} The judgment of the trial court will be affirmed.
BROGAN, J., concurs.